STATE OF LOUISIANA       *       NO. 2024-K-0159

VERSUS       *       COURT OF APPEAL

JORDAN MITCHELL       *       FOURTH CIRCUIT

      *       STATE OF LOUISIANA

      *

      *
* * * * * * *

**LOBRANO, J., CONCURS WITH REASONS**

I concur with the majority's opinion in its entirety. I also find that the defendant, Jordan Mitchell ("Mitchell"), failed to prove by "convincing evidence" that a joint trial with the two other co-defendants, Zakyis Bolden ("Bolden") and Dylan Johnson ("Johnson"), would compromise his right to a fair trial. Mitchell, Bolden, and Johnson are all charged with two counts of attempted first-degree murder, one count of first-degree rape, two counts of second-degree kidnapping, and one count of armed robbery. A joint trial prosecuting these charges together with certain safeguards is not only proper for the prosecution, efficient for the courts, and compassionate and fair to the victims, but it is also fair and just for the defendants.

I write separately only to emphasize two important aspects of this case that the district court failed to consider but instead applied a rigid application of severance not taking into account the dynamics of the criminal justice system and the various trial strategy safeguards that have been placed to remove any barriers to fairness in the joint trial.

First, the potential for Mitchell to experience injustice and be subjected to an unfair joint trial is extremely low. Various safeguards have been put into place to protect Mitchell's right to confront and cross examine the witness against him

1

under Article 1, § 16 of the Louisiana Constitution and the Sixth Amendment of the United States Constitution; thus, justice does not requires a severance. No extrajudicial statements of a non-testifying co-defendant, which implicate Mitchell, will be admitted at the joint trial. In cases cited by the district court and dissent, a severance was warranted because the State anticipated the admission of such extrajudicial statements into evidence at the joint trial or severance was not at issue.[1] In *State v. Craddock*, 23-01147 (La. 11/15/23), 373 So.3d 47, the State intended to admit a jailhouse recording of a co-defendant that directly implicated the defendant as the shooter in the murder. The Supreme Court found that justice required a severance because a joint trial would violate the defendant's right to confront and cross examine the witness against him. *Craddock*, 23-01147, p. 2, 373 So.3d at 48. No such extrajudicial statements of Bolden nor Johnson will be admitted into evidence at the joint trial. If Bolden or Johnson decides to testify at the joint trial, then Mitchell will have the right to confront and cross-examine them removing any barriers to fairness in the joint trial. The State has made clear that the two juvenile victims will testify as to the actions and culpability of all three defendants during the course of the kidnappings, rape, and attempted murders.

Second, the State has great prosecutorial discretion in forming trial strategies and adopting safeguards to maintain the integrity of joint trials while promoting judicial economy and the well-being of the victims and witnesses. The State intends to call 28 to 30 witnesses during trial, including the two victims. One of the victims is confined to a wheelchair and needs special accommodations to travel to New Orleans from another State. Severing the trials of the co-defendants would prejudice the State in its prosecution and be unnecessarily burdensome for the court. More importantly, it would be unduly traumatic to the two juvenile victims.

---

[1] *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), involved the admissibility of a statement of a co-defendant in a joint trial but did not involve a motion to sever.

The State plans to call the 14- and 15-year-old victims to testify as follows: On June 9, 2022, Mitchell, Bolden, and Johnson picked them up in Slidell and then drove to an unspecified location in New Orleans East. Mitchell asked one of the teenagers to have sex with him, and when she refused, he then pulled out a gun and forced her to perform oral sex and then vaginally raped her in the front seat of the car. Bolden and Johnson stood outside the vehicle while Mitchell raped the teenager. At the conclusion of the rape, Mitchell shot both victims with a .38-caliber firearm. The rape victim was shot once in the head, and the other was shot multiple times on her body, and once in the head. The three defendants then removed the girls from the vehicle and abandoned them on the side of the road in the 2100 block of Chef Menteur Highway. The rape victim pretended to be dead and waited for all three defendants to leave the scene in Mitchell's car before seeking help from a resident close by. When officers arrived, the rape victim was in a state of shock and said, "Please don't let me die." Her left eye was swollen shut, and she was bleeding from her face and left ear. She had no shirt on, her pants were unzipped, and her brassiere was saturated with blood. The other teenager was lying on her back in a pool of blood. She was unable to speak due to the severe gunshot wound to her head. The rape victim was able to give the first names of the perpetrators to the officers.

A severance would require the two juvenile victims to relive the horrors they experienced on June 9, 2022, over the course of multiple trials. This would be unduly burdensome on the court and witnesses and traumatic to the victims especially considering that the potential for an unfair joint trial is minimal. Moreover, Mitchell has post-trial remedies whereby the courts will review the trial transcripts and decide whether he received a fair joint trial. *See State v. Williams*, 416 So.2d 914 (La. 1982) (in reviewing a denial of a severance, the Supreme Court

3

found that the trial evidence did not indicate prejudice to either defendant as a result of a joint trial).

Various safeguards and processes during pre-trial, trial, and post-trial are in place to maintain a fair joint trial as well as the well-being of the victims and witnesses. The district court failed to properly balance the concerns for efficiency and integrity of the trial process with that of asserted interests and rights. Mitchell's right to a fair joint trial has been secured, and a joint trial would protect the rights and well-being of the victims. The district court's ruling should be reversed and allow the joint trial to proceed on April 1, 2024.